# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARCUS BARRETT** and **WENDY WIERZBICKI**, both individually and On behalf of their minor child, **B.B.**, in his own right,

          Plaintiffs,

v.

**REBECCA ROBYDEK**, individually and in her capacity as a Children's Protective Services Supervisor with the Michigan Department of Health and Human Services, **KAITLYN MONTONE**, individually and in her capacity as Children's Protective Services Social Worker with the Michigan Department of Health and Human Services, **RENEE SMITH**, individually and in her capacity as a Children's Protective Services Supervisor with the Michigan Department Of Health and Human Services, **RYAN MAKOWSKI**, individually and in his capacity as Children's Protective Services Social Worker with the Michigan Department of Health and Human Services, and **HON. MIRIAM A. CAVANAUGH**, Individually and in her capacity as the Livingston County Probate Judge acting in the Family Division of the 44th Judicial Circuit Court,

          Defendants.

_____/

Case No.

**HON.**

**MAG.**

| COMPLAINT |
| --- |

## COMPLAINT

NOW COME, Plaintiffs, **MARCUS BARRETT** and **WENDY WIERZBICKI**, both individually and on behalf of their minor child, **B.B.** in his own right, by and through their attorneys, TAYLOR BUTTERFIELD, P.C., and in their Complaint, they state as follows:

## Introduction

1.      This is a civil action brought pursuant to 42 USC 1983, in which Plaintiffs seek compensatory and punitive damages against the individual Defendants, in their individual capacities, for acts committed under the color of law, which violated the rights guaranteed to the Plaintiffs under the Fourth and Fourteenth Amendments of the United States Constitution.

## Jurisdiction and Venue

2.      This Court has original jurisdiction over Plaintiffs' claims pursuant to 42 USC 1983 and under 28 USC 1331 and 1343.

3.      Venue is proper in the Eastern District of Michigan pursuant to 28 USC 1391(b) because the events giving rise to this action occurred in the Eastern District of Michigan and the Defendants reside or are located within this district.

2

**Parties**

4.     Plaintiffs are citizens of the United States and at all times material to this action, were first residents of the City of Howell, Livingston County, Michigan and then residents of the Village of Clarkston, Oakland County, Michigan.

5.     Plaintiff, **MARCUS BARRETT** ("Marcus"), is the father of Plaintiff, **B.B.**, born on xx/xx/2009.

6.     Plaintiff, **WENDY WIERZBICKI** ("Wendy"), is the mother of Plaintiff, **B.B.**, born on xx/xx/2009.

7.     Defendant, **REBECCA ROBYDEK** ("Robydek"), was at all times material to this Complaint, a CPS Social Worker with the MDHHS in Livingston County.

8.     Defendant, **KAITLYN MONTONE** ("Montone"), was at all times material to this Complaint, a Children's Protective Services ("CPS") Social Worker with the Michigan Department of Health and Human Services ("MDHHS") in Livingston County.

9.     Defendant, **RENEE SMITH** ("Smith"), was at all times material to this Complaint, a CPS Supervisor with the MDHHS in Livingston County.

10.     Defendant, **RYAN MAKOWSKI** ("Makowski"), was at all times material to this Complaint, a CPS Social Worker with the MDHHS in Livingston County.

3

11.     Defendant, **HON. MIRIAM A. CAVANAUGH** ("Hon. Cavanaugh"), was at all times material to this Complaint, the Livingston County Probate Judge, acting in the capacity of a Judge for the Family Division of the 44th Judicial Circuit Court.

12.     Plaintiffs file suit against **Robydek**, **Montone**, **Smith**, **Makowski**, and **Hon. Cavanaugh** in their individual capacities.

### General Allegations

13.     This matter stems from a long history of false neglect and abuse allegations and unsubstantiated cases related to Marcus and his older son, S.B.

14.     At least seventeen (17) CPS complaints were made between 9/11/12 and 9/27/18:

        a.      On or about 9/11/12, a CPS complaint was received in alleging that Marcus physically abused S.B., however, that complaint was denied;

        b.      On or about 7/30/14, S.B. left Marcus's house and alleged that Marcus had hit him, however, after performing an investigation, the CPS social worker determined that there was no preponderance of evidence that S.B. was physically abused by Marcus and the case was closed;

        c.      On or about 6/3/16, S.B. alleged that he was again physically abused by Marcus, however, after CPS investigated and conducted a forensic interview with S.B., the CPS social worker determined that there was no

4

preponderance of evidence that S.B. was physically abused by Marcus and the case was closed;

d. On or about 9/7/16, S.B. again made allegations that Marcus physically abused him, however, on 11/2/16, after investigating CPS social worker Derek Schultz and Robydek recommended the case be closed;

e. On or about 10/26/16, CPS intake received a complaint reporting the same allegations that Marcus had physically abused S.B. that had already been investigated in the 9/7/16 complaint, therefore, the 10/26/16 complaint was rejected;

f. On or about 2/23/17, a CPS complaint was received alleging that Marcus physically abused S.B., however, that complaint was denied;

g. On or about 6/5/18, a CPS complaint was received alleging that Marcus and Wendy had improperly supervised S.B. and that she had caused S.B. mental injury and physically abused him;

h. On or about 6/15/18, S.B. alleged in a CPS complaint that Wendy had improperly supervised him, however, CPS rejected this complaint;

i. On or about 7/3/18, CPS rejected a complaint that Wendy had improperly supervised and/or physically abused S.B.;

5

j.      On or about 8/5/18, another CPS complaint was received alleging that Wendy had improperly supervised S.B. and has cause him mental injury and had physically abused him, however, this compliant was rejected by CPS;

k.      On or about 8/9/18, a CPS complaint was received alleging abandonment and improper supervision being conducted by Marcus towards S.B., however, CPS social worker Natasha Thomas and Robydek determined that there was no preponderance of the evidence leading to the case being denied;

l.      On or about 8/10/18, a similar CPS complaint was received alleging that Marcus improperly supervised S.B., and it was noted in that complaint that "[S.B.] makes up stories to get Marcus and other adults in trouble with police and CPS";

m.      On or about 9/5/18, S.B. alleged that he had been physically neglected by Marcus and Wendy (Investigation ID: 42411739);

n.       On the same day, a second case was also reported alleging maltreatment and that Marcus had physically neglected S.B. (Investigation ID: 42411740); and

o.      While CPS was investigating the 9/5/18 complaints, a complaint was received on or about 9/15/18 alleging that Marcus had physically abused S.B.,

6

p.      On or about 9/26/18, CPS rejected another complaint that Marcus was physically abusive towards S.B.; and

q.      Likewise, on or about 9/27/18, a complaint was made alleging that Marcus had improperly supervised and/or physically neglected S.B., but this complaint was also rejected.

15.    On 9/18/18, Marcus and B.B. met with CPS social workers Sharyn Jeske and Natasha Thomas, so that Marcus could work with CPS and come up with some kind of plan to deal with the issues S.B. had been causing.

16.    Robydek abruptly burst into the meeting, and Robydek asked Marcus and CPS social worker Sharyn Jeske "is there a solution for [S.B.]?", to which CPS social worker Sharyn Jeske replied "well we don't…but were looking at this" pointing at a flyer for a juvenile boot camp.

17.    Robydek then turned looking directly at Marcus and B.B., and she exclaimed, "[i]f you do not sell your house and move out of the county we are not going to come over on Saturdays for [S.B.'s] false reports to help your family out. We are not going to waste our overtime pay or resources on Saturdays and money for his false reports and police are not going to come out anymore either. If you do not move out quickly not only, will we take away [S.B.], but we will take your favorite son [B.B.] as well."

18. When Marcus and B.B. left that meeting with Robydek, Marcus went to the front desk at the CPS office to request to speak to Robydek's supervisor to report what Robydek had said to him.

19. Robydek then came out from the back office to the front desk and attempted to intimidate Marcus to make him leave so he would not report what she had said to her supervisor.

20. On 10/19/18, approximately one month after Marcus reported Robydek, Robydek then signed the Children's Protective Services Investigation Report alleging that a preponderance of the evidence was found for the one of the complaints made on 9/5/18, Investigation ID: 42411740.

21. On or about 10/25/18 and 10/26/18, two more CPS complaints were made alleging that Marcus had physically abused, improperly supervised, and had maltreated S.B., and in these complaints it is now noted that Marcus is the one that manipulates law enforcement and claims that S.B. is a troubled and poorly behaved child.

22. On 10/26/18, CPS social worker Sharyn Jeske filed a petition for the removal of S.B. and B.B., and this petition was approved by Robydek even though there have been no complaints alleging any kind of abuse to B.B. by either Marcus or Wendy.

23. On 11/5/18, the Trial Court ordered that B.B. was to be released to Wendy and that Marcus would continue to have supervised parenting time with B.B.

24. Despite the Trial Court's order, Montone refused to release B.B. to Wendy for two whole days after the Trial Court's order was entered.

25. Montone did not seek or obtain a court order prior to refusing to release B.B. to Wendy until two days after the Trial Court's order was entered.

26. Neither Wendy, nor B.B., consented to Montone refusing to release B.B. to Wendy until two days after the Trial Court's order to do so.

27. There were no exigent circumstances for Montone to refuse to release B.B. to Wendy until two days after the Trial Court's order was entered.

28. On 12/17/18, the Trial Court verbally ordered that Marcus would have parenting time with B.B. a minimum of two times per week and for a minimum of one hour each time.

29. On 12/18/18, the Trial Court signed the order that "[p]arenting time shall be a minimum of two times per week; for a minimum of one hour…."

30. Montone refused to provide Marcus with his parenting time with B.B. for the full week of 12/17/18 – 12/23/18, despite repeated requests to do so.

31. Montone additionally refused Marcus's request for any parenting time with B.B. for both Christmas Eve and Christmas.

32.     On 12/21/18, Smith admits in her email to Marcus that his parenting time with B.B. was missed.

33.     Montone did not seek or obtain a court order prior to terminating the 12/17/18 – 12/23/18 parenting time.

34.     Neither Marcus nor B.B. consented to Montone's refusal to provide Marcus with his parenting time with B.B. for the full week of 12/17/18 – 12/23/18.

35.     There were no exigent circumstances for Montone to refuse to provide Marcus with his parenting time with B.B. for the full week of 12/17/18 – 12/23/18.

36.     On 12/24/18, Marcus was forced to file a Motion for Order of Contempt for Montone's refusal to provide Marcus with his parenting time with B.B. for the full week of 12/17/18 – 12/23/18.

37.     The Trial Court issued an Order of Adjudication on 1/4/19, whereby, Marcus's supervised parenting time with B.B. was continued and Marcus's Motion for Order of Contempt Against Livingston County DHHS & Kaitlyn Montone & for Attorney Fees & Costs was adjourned until further notice.

38.     In her 1/7/19 email, Montone also admits that Marcus's parenting time with B.B. was missed.

39.     On 1/10/19, Montone was to facilitate Marcus's parenting time with B.B. from 5pm to 6pm.

40.     As a pretext to cut the parenting time short—either because it was after her normal working hours or in retaliation for Marcus having previously filed his Motion and Order for Contempt against her—Montone terminated the Marcus's parenting time with B.B. after only 15 minutes.

41.     Montone indicated to Sergeant McConkie of the Greenville Department of Public Safety that she did so on her supervisor's direction, claiming that Marcus was speaking to B.B. about the pending neglect and abuse case.

42.     Contrary to Montone's assertion, Marcus did not speak with B.B. about the pending neglect and abuse case.

43.     Montone did not seek or obtain a court order prior to terminating the 1/10/19 parenting time.

44.     Neither Marcus, nor B.B., consented to Montone's refusal to provide Marcus with his parenting time with B.B. on 1/10/19.

45.     There were no exigent circumstances for Montone to refuse to provide Marcus with his parenting time with B.B. on 1/10/19.

46.     At some point in time, between 1/10/19 and 1/27/19, Makowski became the CPS Caseworker for the underlying neglect and abuse case.

47.     On 1/22/19, at Flat River Community Library, Makowski threatening Wendy and Marcus in front of B.B., stated that B.B. had to meet with Makowski in private for a home visit claiming that "the court order does say that we to speak with

him" even though there was NO court order in place stating that Makowski was to speak with B.B. in private at that time.

48. Makowski refused to provide Marcus with his parenting time with B.B. for the full week of 1/27/19 - 2/2/19, despite repeated requests to do so.

49. Makowski did not seek or obtain a court order prior to terminating this parenting time.

50. Neither Marcus nor B.B. consented to Makowski's refusal to provide Marcus with his parenting time with B.B. for the full week of 1/27/19 - 2/2/19.

51. There were no exigent circumstances for Makowski to refuse to provide Marcus with his parenting time with B.B. for the full week of 1/27/19 - 2/2/19.

52. On 2/5/19, the Trial Court issued the order requiring that S.B. "will engage in psychological evaluations as arranged by the DHHS. The status of evaluation for [S.B.] will not be a barrier to withdrawing the petition"; additionally, the Trial Court ordered that B.B. was to be released to Marcus and Wendy.

53. Despite the order requiring DHHS to arrange S.B.'s psychological evaluation, Marcus had extreme difficulty getting Makowski to comply with the order.

54. On 2/27/19, the Trial Court entered an order that "Sibling visits shall occur" and that "DHHS shall refer the children for sibling visits…within 5 days of the order."

12

55. When Marcus attempted to request a sibling visit for S.B. and B.B., Makowski made his referral to a location that was approximately 130 miles from B.B.'s residence and 55 miles from S.B.'s residence, and when Marcus asked Makowski to set the location so that it would be fair to both siblings, Makowski refused and disregarded all communication with Marcus regarding the sibling visit.

56. Additionally, Makowski prohibited Marcus from being part of any of B.B.'s extracurricular activities or doctor appointments, in fact, Makowski wouldn't even tell Marcus if any of those activities had been scheduled.

57. On 3/18/19, Marcus was forced to file a Motion for Order of Contempt Against Makowski for his refusal to comply with the Trial Courts order regarding psychological examinations, its order regarding sibling visits, Makowski's refusal to provide Marcus his parenting time with B.B. for the full week of 1/27/19 - 2/2/19, and Makowski's prohibiting of Marcus from being part of any of B.B.'s extracurricular activities or doctor appointments.

58. On 5/7/19, in retaliation for filing the Motion for Order of Contempt, Makowski filed a Supplemental Petition to, once again, remove B.B. from Marcus's and Wendy's care and custody and to terminate Marcus's parental rights to S.B.

59. In part, Makowski based his decision to file a Supplemental Petition on the allegation that Marcus and Wendy refused to allow him to have a private conversation with B.B. during the home visit on 3/26/19 and 4/23/19.

13

60. On 6/18/19, the Trial Court issued an order that B.B. was, once again, released to Marcus and Wendy.

61. On 9/30/19, the Trial Court entered an *ex parte* order removing B.B. from Marcus's and Wendy's care and custody.

62. On 3/5/20, the Trial Court ordered that Marcus's parenting time with B.B. be supervised by Issac Watts, MA, LPC.

63. Mr. Watts supervised Marcus's parenting time with B.B. on 3/13/20, and they planned to meet again on 3/20/20 for another parenting time visit.

64. Makowski again refused to provide Marcus with his parenting time with B.B. on 3/20/20, despite repeated requests to do so.

65. On 3/25/20, Marcus was notified by Makowski that Marcus's parenting time with B.B. was being terminated even though Mr. Watts was willing to supervise the visits.

66. Makowski refused to provide Marcus and B.B. with any parenting time from 3/14/20 – 3/31/20.

67. Makowski did not seek or obtain a court order prior to terminating this parenting time.

68. Neither Marcus, nor B.B., consented to Makowski's refusal to provide Marcus with his parenting time with B.B. from 3/14/20 – 3/31/20.

69.     There were no exigent circumstances for Makowski to refuse to provide Marcus his parenting time with B.B. from 3/14/20 – 3/31/20.

70.     On 3/23/20, Governor Witmer issued an Executive Order requiring that all non-essential workers to stay home; however, the Executive Order had an exception allowing people to leave their homes for court ordered parenting time and custody.

71.     On 3/27/20, Marcus was forced to file an Emergency Motion to Compel DHHS to Comply with Parenting Time Order for Makowski's refusal to provide Marcus his parenting time with B.B. from 3/14/20 – 3/31/20.

72.     At a hearing held on 11/10/20, the following events occurred:

a.     Hon. Cavanaugh stated on the record that Marcus was to be "allowed supervised parenting time, including overnights" with B.B. (11/10/20 Hearing Tr, 152:11-12)

b.     Hon. Cavanaugh then stating that "it's probably not a problem in this case, but the issue with regards to not exceeding a certain amount of nights goes towards funding. It becomes a funding issue. If the kids are in the home them funding can potentially -- it's an issue of funding." (11/10/20 Hearing Tr, 153:4-8)

c.     Hon. Cavanaugh further indicated:

That's why the Court follows the policy, because
payment by sources -- federal sources gets lost. So

15

> the Court has to take that into consideration. I know people think that the Court has, you know, some extended powers, but I also have to be aware sometimes in certain cases, and it might not be present in this case, but in some cases funding's an issue for kids. So I have to be cognizant of that all the time.

(11/10/20 Hearing Tr, 153:10-17)

d.     Hon. Cavanaugh asked Makowski, "[s]o the order as it reads, the current one from -- it says DHS shall have discretion for increased supervised parenting time for the respondent mother, including overnights with notice to DHHS. Is there going to be any problem with that same language for a respondent father -- if we're including respondent father in that?" (11/10/20 Hearing Tr, 153:20-154:1)

e.     Makowski objected to the suggestion that Marcus get more parenting time with B.B. supervised by Mr. Watts because it was "draining the childcare fund", and he further explained that "[w]e're spending so much money from the childcare fund for supervised visitation, we'll set the record for the amount of money we've drained on the childcare fund for that." (11/10/20 Hearing Tr, 164:10-15)

f.     Makowski then proposed to "let them have supervised visitation. Not overnight, but with the relative caregiver with notice to us." (11/10/20 Hearing Tr, 164:24-165:2)

16

g.   Instead of giving Marcus supervised parenting time with overnights as she initially indicated she would do, Hon. Cavanaugh ordered, "So what I will do is allow dad to have supervised parenting time, supervised by a designee which the Department has indicated on the record they will agree to maternal grandparents as designees." (11/10/20 Hearing Tr, 165:8-11)

h.   Hon. Cavanaugh further explained her order, "Dad gets supervised two times a week for a total of ten hours with a full day on Thanksgiving." (11/10/20 Hearing Tr, 168:7-8)

i.   To Makowski, Hon Cavanaugh then said, "So you don't have to continue Mr. Watts anymore." (11/10/20 Hearing Tr, 168:9)

j.   To which Makowski replies, "Thank you, Your Honor."

73.   On 2/23/21, the Trial Court, on its own initiative, entered an order terminating jurisdiction of the court and returning B.B. to Marcus's and Wendy's care and custody.

**Count I – 42 USC 1983**
**For the Deprivation of Marcus's, Wendy's, and B.B.'s**
**Fourteenth Amendment Substantive Due Process Rights**
(*By Marcus, Wendy, and B.B. as to Defendant Rebecca Robydek*)

74.   Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

17

75.     The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." US Const, Am XIV.

76.     Additionally, the Fourteenth Amendment guarantees a right to privacy, which includes personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. (see *Palko v Connecticut*, 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937)).

77.     This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (see *Eisenstadt v Baird*, 405 US 438, 453-454; 92 S Ct 1029; 31 L Ed 2d 349 (1972)).

78.     Furthermore, parents have a fundamental liberty interest in the care, custody, and management of their children. (see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

79.     Due process rights apply to both children and parents. (see *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

80.     Substantive due process provides that, irrespective of the constitutional sufficiency of the process afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose. (see *Pittman v Cuyahoga Cnty Dep't of Children & Family Services*, 640 F3d 716, 728-729 (6th Cir 2011)).

81.     Conduct that is "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights" is a deprivation of substantive due process. (see *Parate v Isibor*, 868 F2d 821, 833 (6th Cir 1989)).

82.     Threatening to seize B.B. if Marcus and Wendy didn't sell their house and move out of the county, when there were no allegations that B.B. had been neglected or abused, was not necessary, nor was it animated by a compelling purpose, as Robydek's threats were motivated to punish Marcus, Wendy, and B.B. because of all the false report S.B. had made.

83.     Robydek's threat to seize S.B. and B.B. if Marcus and Wendy didn't sell their house and move out of the county because she wanted to punish Marcus, Wendy, and B.B. because of all the false reports S.B. made was so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights.

84.     Robydek's threat to seize S.B. and B.B. if Marcus and Wendy didn't sell their house and move out of the county because she wanted to punish Marcus, Wendy, and B.B. because of all the false reports S.B. made led to B.B. being removed from Marcus's and Wendy's care and custody.

85.     Robydek (acting under the color of law), by her actions of threatening to seize S.B. and B.B. if Marcus and Wendy didn't sell their house and move out of

19

the county because she wanted to punish Marcus, Wendy, and B.B. because of all the false reports S.B. had made, Robydek violated Marcus's, Wendy's, and B.B.'s Fourteenth Amendment Substantive Due Process Rights to be free from a state actor's conduct that is so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights.

86.    Robydek's conduct interfered with Marcus's, Wendy's, and B.B.'s right to the maintenance of a parent-child relationship.

87.    CPS supervisors, such as Robydek, are not entitled to Absolute Immunity when removing children from a home because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

88.    At the time of Robydek's threats, the Fourteenth Amendment Due Process right to the maintenance of a parent-child relationship was clearly established. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 700 (6th Cir 2013)).

89.    Robydek is not entitled to Qualified Immunity for her action of threatening to seize S.B. and B.B. if Marcus and Wendy didn't sell their house and move out of the county because she wanted to punish Marcus, Wendy, and B.B.

20

because of all the false reports S.B. had made which led to B.B.'s seizure in violation of Marcus's, Wendy's, and B.B.'s Fourteenth Amendment Substantive Due Process Rights.

90. Robydek (acting under the color of state law), by her conduct, showed intentional, outrageous, and reckless disregard for Marcus's, Wendy's, and B.B.'s constitutional rights.

91. As a direct and proximate result of Robydek's conduct, Marcus, Wendy, and B.B. have suffered emotional injury and the loss of their constitutionally protected rights described above.

**Count II – 42 USC 1983**
**For the 11/5/18 – 11/7/18 Seizure of B.B.**
**in Violation of the Fourth Amendment**
(*By B.B. as to Defendant Kaityn Montone*)

92. Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

93. The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures by government officials. US Const Am IV.

94. CPS Investigators, like other state officers, are governed by the Fourth Amendment's warrant requirement, and thus, they must obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in

21

warrantless entries and searches of homes. (see *Andrews v Hickman Cnty*, 700 F3d 845, 859-860 (6th Cir 2012)).

95.     When Montone refused to release B.B. to Wendy until two days after the 11/5/18 order of the Trial Court requiring her to do so, despite Wendy's repeated requests to do so, Montone did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 11/5/18.

96.     Neither Wendy, nor B.B., consented to Montone refusing to release B.B. to Wendy until two days after the Trial Court's order to do so.

97.     Additionally, there were no exigent circumstances to justify Montone's seizure of B.B.

98.     Montone (acting under color of state law), by her action of refusing to release B.B. to Wendy for two days after the Trial Court's 11/5/18 order requiring her  to do so, despite Wendy's repeated requests to do so, without judicial pre-approval, and when it was contrary to the Trial Court's existing order, dated 11/5/18, deprived B.B. of his right to be free from unlawful searches and seizures in violation of the Fourth Amendment of the United States Constitution.

99.     A CPS social worker, such as Montone, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

22

100. At the time of the deprivation, it was clearly established that the Fourth Amendment warrant requirement applied to the seizure of children by social workers. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 699 (6th Cir 2013)).

101. Montone is not entitled to Qualified Immunity for her action of seizing B.B. when she refused to release B.B. to Wendy until two days after the Trial Court's order requiring her to do so, without judicial pre-approval, and when it was contrary to the Trial Court's existing order, dated 11/5/18.

102. Montone (acting under the color of law), by her conduct, showed intentional, outrageous, and reckless disregard for B.B.'s constitutional rights.

103. As a direct and proximate result of Montone's conduct, B.B. has suffered emotional injury and the loss of his constitutionally protected rights described above.

**Count III – 42 USC 1983**
**For the 11/5/18 – 11/7/18 Deprivation of Wendy's and B.B.'s**
**Fourteenth Amendment Procedural Due Process Rights**
(*By Wendy and B.B. as to Defendant Kaityn Montone*)

104. Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

105. The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." US Const, Am XIV.

106. Additionally, the Fourteenth Amendment guarantees a right to privacy, which includes personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. (see *Palko v Connecticut*, 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937)).

107. This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (see *Eisenstadt v Baird*, 405 US 438, 453-454; 92 S Ct 1029; 31 L Ed 2d 349 (1972)).

108. Furthermore, parents have a fundamental liberty interest in the care, custody, and management of their children. (see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

109. Due process requires, among other things, that a parent be given notice prior to the seizure of a child stating the reasons for the seizure and that the parent be given a full opportunity at the hearing to present witnesses and evidence on his or her behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

110. Due process rights apply to both children and parents. (see *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

111. When Montone refused to release B.B. to Wendy until two days after the 11/5/18 order of the Trial Court requiring her to do so, despite Wendy's repeated requests to do so, Montone did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 11/5/18.

112.   When Montone refused to release B.B. to Wendy until two days after the 11/5/18 order of the Trial Court requiring her to do so, despite Wendy's repeated requests to do so, neither Wendy nor B.B. had been given notice prior to the seizure stating the reasons for seizure, nor were they given a full opportunity at the hearing to present witnesses and evidence on their behalf.

113.   Montone (acting under color of state law), by her action of refusing to release B.B. to Wendy until two days after the 11/5/18 order of the Trial Court requiring her to do so, despite Wendy's repeated requests to do so, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 11/5/18, and without giving notice prior to the seizure stating the reasons for seizure and without giving a full opportunity at the hearing to present witnesses and evidence on their behalf, deprived Wendy and B.B. of their liberty right without due process of law in violation of the Procedural Due Process Clause of the Fourteenth Amendment of the United States Constitution.

114.   A CPS social worker, such as Montone, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

115.   At the time of the deprivation, it was clearly established that the Fourteenth Amendment Due Process Clause requires, among other things, that

parents be given notice prior to the seizure of a child stating the reasons for seizure and that the parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

116. Montone is not entitled to Qualified Immunity for her action of refusing to release B.B. to Wendy until two days after the 11/5/18 order of the Trial Court requiring her to do so, despite Wendy's repeated requests to do so, without judicial pre-approval and when it was contrary to the Trial Court's existing order, and without giving notice prior to the seizure stating the reasons for seizure and without giving Wendy and B.B. a full opportunity at the hearing to present witnesses and evidence on their behalf.

117. Montone (acting under the color of state law), by her conduct, showed intentional, outrageous, and reckless disregard for Wendy's and B.B.'s constitutional rights.

118. As a direct and proximate result of Montone's conduct, Wendy and B.B. have suffered emotional injury and the loss of their constitutionally protected rights described above.

**Count IV – 42 USC 1983**
**For the 12/17/18 through 12/23/18 Seizure of B.B.**
**in Violation of the Fourth Amendment**
(*By B.B. as to Defendant Kaityn Montone*)

119.   Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

120.   The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures by government officials. US Const Am IV.

121.   CPS Investigators, like other state officers, are governed by the Fourth Amendment's warrant requirement, and thus, they must obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes. (see *Andrews v Hickman Cnty*, 700 F3d 845, 859-860 (6th Cir 2012)).

122.   When Montone refused to provide Marcus his parenting time with B.B. for the full week of 12/17/18 – 12/23/18, despite Marcus's repeated requests to do so, she did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 12/18/18.

123.   Neither Marcus, nor B.B., consented to Montone's denial of his parenting time with B.B.

124.   Additionally, there were no exigent circumstances to justify Montone's denial of Marcus's parenting time with B.B.

125.   Montone (acting under color of state law), by her action of refusing to provide Marcus parenting time with B.B. for the full week of 12/17/18 – 12/23/18, despite Marcus's repeated requests to do so, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 12/18/18, deprived B.B. of his right to be free from unlawful searches and seizures in violation of the Fourth Amendment of the United States Constitution.

126.   A CPS social worker, such as Montone, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

127.   At the time of the deprivation, it was clearly established that the Fourth Amendment warrant requirement applied to the seizure of children by social workers. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 699 (6th Cir 2013)).

128.   Montone is not entitled to Qualified Immunity for her action of seizing B.B. when she refused to allow parenting time with Marcus for the full week of 12/17/18 – 12/23/18, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 12/18/18.

129. Montone (acting under the color of law), by her conduct, showed intentional, outrageous, and reckless disregard for B.B.'s constitutional rights.

130. As a direct and proximate result of Montone's conduct, B.B. has suffered emotional injury and the loss of his constitutionally protected rights described above.

**Count V – 42 USC 1983**
**For the 12/17/18 through 12/23/18 Deprivation of Marcus's and B.B.'s**
**Fourteenth Amendment Procedural Due Process Rights**
(*By Marcus and B.B. as to Defendant Kaityn Montone*)

131. Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

132. The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." US Const, Am XIV.

133. Additionally, the Fourteenth Amendment guarantees a right to privacy, which includes personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. (see *Palko v Connecticut*, 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937)).

134. This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (see *Eisenstadt v Baird*, 405 US 438, 453-454; 92 S Ct 1029; 31 L Ed 2d 349 (1972)).

135. Furthermore, parents have a fundamental liberty interest in the care, custody, and management of their children. (see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

136. Due process requires, among other things, that a parent be given notice prior to the seizure of a child stating the reasons for the seizure and that the parent be given a full opportunity at the hearing to present witnesses and evidence on his or her behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

137. Due process rights apply to both children and parents. (see *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

138. When Montone refused to provide Marcus his parenting time with B.B. for the full week of 12/17/18 – 12/23/18, despite Marcus's repeated requests to do so, she did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 12/18/18.

139. When Montone refused to provide Marcus his parenting time with B.B. for the full week of 12/17/18 – 12/23/18, despite Marcus's repeated requests to do so, neither Marcus nor B.B. had been given notice prior to the seizure stating the reasons for seizure, nor were they given a full opportunity at the hearing to present witnesses and evidence on their behalf.

140. Montone (acting under color of state law), by her action of refusing to provide Marcus parenting time with B.B. for the full week of 12/17/18 – 12/23/18,

30

despite Marcus's repeated requests to do so, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 12/18/18, and without giving notice prior to the seizure stating the reasons for seizure and without giving a full opportunity at the hearing to present witnesses and evidence on their behalf, deprived Marcus and B.B. of their liberty right without due process of law in violation of the Procedural Due Process Clause of the Fourteenth Amendment of the United States Constitution.

141.   A CPS social worker, such as Montone, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

142.   At the time of the deprivation, it was clearly established that the Fourteenth Amendment Due Process Clause requires, among other things, that parents be given notice prior to the seizure of a child stating the reasons for seizure and that the parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

143.   Montone is not entitled to Qualified Immunity for her action of seizing B.B. when she refused to allow parenting time with Marcus for the full week of 12/17/18 – 12/23/18, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 12/18/18, and without giving notice prior to the

31

seizure stating the reasons for seizure and without giving Marcus and B.B. a full opportunity at the hearing to present witnesses and evidence on their behalf.

144.   Montone (acting under the color of state law), by her conduct, showed intentional, outrageous, and reckless disregard for Marcus's and B.B.'s constitutional rights.

145.   As a direct and proximate result of Montone's conduct, Marcus and B.B. have suffered emotional injury and the loss of their constitutionally protected rights described above.

### Count VI – 42 USC 1983
### For the 1/10/19 Seizure of B.B. in Violation of the Fourth Amendment
*(By B.B. as to Defendant Kaityn Montone)*

146.   Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

147.   The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures by government officials. US Const Am IV.

148.   CPS Investigators, like other state officers, are governed by the Fourth Amendment's warrant requirement, and thus, they must obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes. (see *Andrews v Hickman Cnty*, 700 F3d 845, 859-860 (6th Cir 2012)).

149.   When Montone refused to provide Marcus his parenting time with B.B. on 1/10/19, despite Marcus's repeated requests to do so, she did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19.

150.   37.   Neither Marcus, nor B.B., consented to Montone's denial of his parenting time with B.B.

151.   Additionally, there were no exigent circumstances to justify Montone's denial of Marcus's parenting time with B.B.

152.   Montone (acting under color of state law), by her action of refusing to provide Marcus parenting time with B.B. on 1/10/19, despite his repeated requests to do so, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19, deprived the B.B. of his right to be free from unlawful searches and seizures in violation of the Fourth Amendment of the United States Constitution.

153.   A CPS social worker, such as Montone, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

154.   At the time of the deprivation, it was clearly established that the Fourth Amendment warrant requirement applied to the seizure of children by social

workers. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 699 (6th Cir 2013)).

155.   Montone is not entitled to Qualified Immunity for her action of seizing B.B. when she refused to allow parenting time with Marcus on 1/10/19, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19.

156.   Montone (acting under the color of law), by her conduct, showed intentional, outrageous, and reckless disregard for B.B.'s constitutional rights.

157.   As a direct and proximate result of Montone's conduct, B.B. has suffered emotional injury and the loss of his constitutionally protected rights described above.

**Count VII – 42 USC 1983**
**For the 1/10/19 Deprivation of Marcus's and B.B.'s**
**Fourteenth Amendment Procedural Due Process Rights**
(*By Marcus and B.B. as to Defendant Kaityn Montone*)

158.   Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

159.   The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." US Const, Am XIV.

160.   Additionally, the Fourteenth Amendment guarantees a right to privacy, which includes personal rights that can be deemed fundamental or implicit in the

concept of ordered liberty. (see *Palko v Connecticut*, 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937)).

161. This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (see *Eisenstadt v Baird*, 405 US 438, 453-454; 92 S Ct 1029; 31 L Ed 2d 349 (1972)).

162. Furthermore, parents have a fundamental liberty interest in the care, custody, and management of their children. (see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

163. Due process requires, among other things, that a parent be given notice prior to the seizure of a child stating the reasons for the seizure and that the parent be given a full opportunity at the hearing to present witnesses and evidence on his or her behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

164. Due process rights apply to both children and parents. (see *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

165. When Montone refused to provide Marcus with his parenting time with B.B. on 1/10/19, she did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19.

166. When Montone refused to provide Marcus his parenting time with B.B. on 1/10/19, despite Marcus's repeated requests to do so, neither Marcus nor B.B. had been given notice prior to the seizure stating the reasons for seizure, nor were

35

they given a full opportunity at the hearing to present witnesses and evidence on their behalf.

167. Montone (acting under color of state law), by her action of refusing to provide Marcus parenting time with B.B. on 1/10/19, despite Marcus's repeated requests to do so, without judicial pre-approval and contrary to the Trial Court's existing order, dated 1/4/19, and without giving notice prior to the seizure stating the reasons for seizure and without giving a full opportunity at the hearing to present witnesses and evidence on their behalf, deprived Marcus and B.B. of their liberty right without due process of law in violation of the Procedural Due Process Clause of the Fourteenth Amendment of the United States Constitution.

168. A CPS social worker, such as Montone, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

169. At the time of the deprivation, it was clearly established that the Fourteenth Amendment Due Process Clause requires, among other things, that parents be given notice prior to the seizure of a child stating the reasons for seizure and that the parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

170.   Montone is not entitled to Qualified Immunity for her action of seizing B.B. when she refused to allow parenting time with Marcus on 1/10/19, without judicial pre-approval and contrary to the Trial Court's existing order, dated 1/4/19, and without giving notice prior to the seizure stating the reasons for seizure and without giving Marcus and B.B. a full opportunity at the hearing to present witnesses and evidence on their behalf.

171.   Montone (acting under the color of state law), by her conduct, showed intentional, outrageous, and reckless disregard for Marcus's and B.B.'s constitutional rights.

172.   As a direct and proximate result of Montone's conduct, Marcus and B.B. have suffered emotional injury and the loss of their constitutionally protected rights described above.

**Count VIII – 42 USC 1983**
**For Supervisor Liability for Implicitly Authorizing, Approving,**
**or Knowingly Acquiescing to Defendant Montone's 1/10/19 Seizure**
**of B.B. in Violation of the Fourth Amendment**
(*By B.B. as to Defendant Renee Smith*)

173.   Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

174.   "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a

37

minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Shehee v Luttrell*, 199 F3d 295, 300 (6th Cir 1999) (quoting *Hays v Jefferson County*, 668 F2d 869, 874 (6th Cir 1982)).

175. The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures by government officials. US Const Am IV.

176. When Montone refused to provide Marcus his parenting time with B.B. on 1/10/19, despite Marcus's repeated requests to do so, she did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19.

177. Neither Marcus, nor B.B., consented to Montone's denial of his parenting time with B.B.

178. Additionally, there were no exigent circumstances to justify Montone's denial of Marcus's parenting time with B.B.

179. Montone indicated to Sergeant McConkie of the Greenville Department of Public Safety that she deprived Marcus's parenting time with B.B. on 1/10/19 on her supervisor's direction.

180. Smith implicitly authorized, approved, or knowingly acquiesced to Montone's seizure of B.B. on 1/10/19 even though:

38

    a.     Montone did not first obtain judicial pre-approval for the seizure and when it was contrary to the Trial Court's order, dated 1/4/19;

    b.     Marcus did not consent to the seizure of B.B.; and

    c.     no exigent circumstances existed to justify the seizure.

181. CPS Supervisors, like other state officers, are governed by the Fourth Amendment's warrant requirement, and thus, they must obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes. (see *Andrews v Hickman Cnty*, 700 F3d 845, 859-860 (6th Cir 2012)).

182. As Montone's direct supervisor, Smith (acting under color of law), by her action of implicitly authorized, approved, or knowingly acquiesced to Montone's seizure of B.B. on 1/10/19 without judicial pre-approval and when it was contrary to the Trial Court's order, dated 1/4/19, deprived B.B. of his right to be free from unlawful searches and seizures in violation of the Fourth Amendment of the United States Constitution.

183. A CPS Supervisor, such as Smith, is not entitled to Absolute Immunity if she implicitly authorized, approved, or knowingly acquiesced to seizure of a child because, in such circumstances, the social worker is acting in a police capacity rather

than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

184. At the time of the deprivation, it was clearly established that the Fourth Amendment warrant requirement applied to the seizure of children by CPS social workers. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 699 (6th Cir 2013)).

185. Smith is not entitled to Qualified Immunity for her action of implicitly authorizing, approving, or knowingly acquiescing Montone's seizure of B.B. on 1/10/19 without judicial pre-approval and when it was contrary to the Trial Court's order, dated 1/4/19.

186. Smith (acting under the color of state law), by her conduct, showed intentional, outrageous, and reckless disregard for B.B.'s constitutional rights.

187. As a direct and proximate result of Smith's conduct, B.B. has suffered emotional injury and the loss of his constitutionally protected rights described above.

**Count IX – 42 USC 1983**
**For Supervisor Liability for Implicitly Authorizing, Approving, or Knowingly Acquiescing to Defendant Montone's 1/10/19 Deprivation of Marcus's and B.B.'s Fourteenth Amendment Procedural Due Process Rights**
(*By Marcus and B.B. as to Defendant Renee Smith*)

188. Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

40

189. "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" Shehee v Luttrell, 199 F3d 295, 300 (6th Cir 1999) (quoting Hays v Jefferson County, 668 F2d 869, 874 (6th Cir 1982)).

190. The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." US Const, Am XIV.

191. Additionally, the Fourteenth Amendment guarantees a right to privacy, which includes personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. (see *Palko v Connecticut*, 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937)).

192. This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (see *Eisenstadt v Baird*, 405 US 438, 453-454; 92 S Ct 1029; 31 L Ed 2d 349 (1972)).

193. Furthermore, parents have a fundamental liberty interest in the care, custody, and management of their children. (see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

194.   Due process requires, among other things, that a parent be given notice prior to the seizure of a child stating the reasons for the seizure and that the parent be given a full opportunity at the hearing to present witnesses and evidence on his or her behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

195.   Due process rights apply to both children and parents. (see *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

196.   When Montone refused to provide Marcus his parenting time with B.B. on 1/10/19, she did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19.

197.   When Montone refused to provide Marcus his parenting time with B.B. on 1/10/19, despite Marcus's repeated requests to do so, neither Marcus nor B.B. had been given notice prior to the seizure stating the reasons for seizure, nor were they given a full opportunity at the hearing to present witnesses and evidence on their behalf.

198.   Montone indicated to Sergeant McConkie of the Greenville Department of Public Safety that she deprived Marcus's parenting time with B.B. on 1/10/19 on her supervisor's direction.

199.   Smith implicitly authorized, approved, or knowingly acquiesced to Montone's seizure of B.B. on 1/10/19 even though:

42

      a.      Montone did not first obtain judicial pre-approval for the seizure and when it was contrary to the Trial Court's order, dated 1/4/19;

      b.      Marcus did not consent to the seizure of B.B.; and

      c.      no exigent circumstances existed to justify the seizure.

200. As Montone's direct supervisor, Smith (acting under color of law), by her action of implicitly authorized, approved, or knowingly acquiesced to Montone's seizure of B.B. on 1/10/19 without judicial pre-approval and when it was contrary to the Trial Court's order, dated 1/4/19, and when neither Marcus nor B.B. had been given notice prior to the seizure stating the reasons for seizure, nor were they given a full opportunity at the hearing to present witnesses and evidence on their behalf.

201. A CPS Supervisor, such as Smith, is not entitled to Absolute Immunity if she implicitly authorized, approved, or knowingly acquiesced to seizure of a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

202. At the time of the deprivation, it was clearly established that the Fourteenth Amendment Due Process Clause requires, among other things, that parents be given notice prior to the seizure of a child stating the reasons for seizure and that the parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

203. Smith is not entitled to Qualified Immunity for her action of implicitly authorizing, approving, or knowingly acquiescing Montone's seizure of B.B. on 1/10/19 without judicial pre-approval and when it was contrary to the Trial Court's order, dated 1/4/19 and without giving notice prior to the seizure stating the reasons for seizure and without giving Marcus and B.B. a full opportunity at the hearing to present witnesses and evidence on their behalf.

204. Smith (acting under the color of state law), by her conduct, showed intentional, outrageous, and reckless disregard for Marcus's and B.B.'s constitutional rights.

205. As a direct and proximate result of Smith's conduct, Marcus and B.B. have suffered emotional injury and the loss of their constitutionally protected rights described above.

**Count X – 42 USC 1983**
**For the 1/27/19 through 2/02/19 Seizure of B.B.**
**in Violation of the Fourth Amendment**
(*By B.B. as to Defendant Ryan Makowski*)

206. Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

207. The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures by government officials. US Const Am IV.

44

208.   CPS social workers, like other state officers, are governed by the Fourth Amendment's warrant requirement, and thus, they must obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes. (see *Andrews v Hickman Cnty*, 700 F3d 845, 859-860 (6th Cir 2012)).

209.   When Makowski refused to provide Marcus his parenting time with B.B. for the full week of 1/27/19 - 2/2/19, despite Marcus's repeated requests to do so, he did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19.

210.   Neither Marcus, nor B.B., consented to Makowski's denial of his parenting time with B.B.

211.   Additionally, there were no exigent circumstances to justify Makowski's denial of Marcus's parenting time with B.B.

212.   Makowski (acting under color of state law), by his action of refusing to provide Marcus parenting time with B.B. for the full week of 1/27/19 - 2/2/19, despite Marcus's repeated requests to do so, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19, deprived B.B. of his right to be free from unlawful searches and seizures in violation of the Fourth Amendment of the United States Constitution.

45

213. A CPS social worker, such as Makowski, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

214. At the time of the deprivation, it was clearly established that the Fourth Amendment warrant requirement applied to the seizure of children by social workers. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 699 (6th Cir 2013)).

215. Makowski is not entitled to Qualified Immunity for his action of seizing B.B. when he refused to allow parenting time with Marcus for the full week of 1/27/19 - 2/2/19, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19.

216. Makowski (acting under the color of law), by his conduct, showed intentional, outrageous, and reckless disregard for B.B.'s constitutional rights.

217. As a direct and proximate result of Makowski's conduct, B.B. has suffered emotional injury and the loss of his constitutionally protected rights described above.

**Count XI – 42 USC 1983**
**For the 1/27/19 through 2/02/19 Deprivation of Marcus's and B.B.'s**
**Fourteenth Amendment Procedural Due Process Rights**
(*By Marcus and B.B. as to Defendant Ryan Makowski*)

218.   Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

219.   The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." US Const, Am XIV.

220.   Additionally, the Fourteenth Amendment guarantees a right to privacy, which includes personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. (see *Palko v Connecticut*, 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937)).

221.   This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (see *Eisenstadt v Baird*, 405 US 438, 453-454; 92 S Ct 1029; 31 L Ed 2d 349 (1972)).

222.   Furthermore, parents have a fundamental liberty interest in the care, custody, and management of their children. (see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

223.   Due process requires, among other things, that a parent be given notice prior to the seizure of a child stating the reasons for the seizure and that the parent

47

be given a full opportunity at the hearing to present witnesses and evidence on his or her behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

224.   Due process rights apply to both children and parents. (see *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

225.   When Makowski refused to provide Marcus his parenting time with B.B. for the full week of 1/27/19 - 2/2/19, despite Marcus's repeated requests to do so, he did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19.

226.   When Makowski refused to provide Marcus his parenting time with B.B. for the full week of 1/27/19 - 2/2/19, despite Marcus's repeated requests to do so, neither Marcus nor the B.B. had been given notice prior to the seizure stating the reasons for seizure, nor were they given a full opportunity at the hearing to present witnesses and evidence on their behalf.

227.   Makowski (acting under color of state law), by his action of refusing to provide Marcus parenting time with B.B. for the full week of 1/27/19 - 2/2/19, despite Marcus's repeated requests to do so, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19, and without giving notice prior to the seizure stating the reasons for seizure and without giving a full opportunity at the hearing to present witnesses and evidence on their behalf, deprived Marcus and B.B. of their liberty right without due process of law in

48

violation of the Procedural Due Process Clause of the Fourteenth Amendment of the United States Constitution.

228.   A CPS social worker, such as Makowski, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

229.   At the time of the deprivation, it was clearly established that the Fourteenth Amendment Due Process Clause requires, among other things, that parents be given notice prior to the seizure of a child stating the reasons for seizure and that the parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

230.   Makowski is not entitled to Qualified Immunity for his action of seizing B.B. when he refused to allow parenting time with Marcus for the full week of 1/27/19 - 2/2/19, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 1/4/19, and without giving notice prior to the seizure stating the reasons for seizure and without giving Marcus and B.B. a full opportunity at the hearing to present witnesses and evidence on their behalf.

231.   Makowski (acting under the color of state law), by his conduct, showed intentional, outrageous, and reckless disregard for Marcus's and B.B.'s constitutional rights.

232.   As a direct and proximate result of Makowski's conduct, Marcus and B.B. have suffered emotional injury and the loss of their constitutionally protected rights described above.

**Count XII – 42 USC 1983**
**For the 3/14/20 through 3/31/20 Seizure of B.B.**
**in Violation of the Fourth Amendment**
(*By B.B. as to Defendant Ryan Makowski*)

233.   Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

234.   The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures by government officials. US Const Am IV.

235.   CPS social workers, like other state officers, are governed by the Fourth Amendment's warrant requirement, and thus, they must obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes. (see *Andrews v Hickman Cnty*, 700 F3d 845, 859-860 (6th Cir 2012)).

236.   When Makowski refused to provide Marcus his parenting time with B.B. from 3/14/20 through 3/31/20, despite Marcus's repeated requests to do so, he did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 3/5/20.

237.   Neither Marcus, nor B.B., consented to Makowski's denial of his parenting time with B.B.

238.   Additionally, there were no exigent circumstances to justify Makowski's denial of Marcus's parenting time with B.B.

239.   Makowski (acting under color of state law), by his action of refusing to provide Marcus parenting time with B.B. for the full week of 3/14/20 through 3/31/20, despite Marcus's repeated requests to do so, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 3/5/20, deprived B.B. of his right to be free from unlawful searches and seizures in violation of the Fourth Amendment of the United States Constitution.

240.   A CPS social worker, such as Makowski, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

241.   At the time of the deprivation, it was clearly established that the Fourth Amendment warrant requirement applied to the seizure of children by social workers. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 699 (6th Cir 2013)).

242.   Makowski is not entitled to Qualified Immunity for his action of seizing B.B. when he refused to allow parenting time with Marcus for the full week of

51

3/14/20 through 3/31/20, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 3/5/20.

243. Makowski (acting under the color of law), by his conduct, showed intentional, outrageous, and reckless disregard for B.B.'s constitutional rights.

244. As a direct and proximate result of Makowski's conduct, B.B. has suffered emotional injury and the loss of his constitutionally protected rights described above.

**Count XIII – 42 USC 1983**
**For the 3/14/20 through 3/31/20 Deprivation of Marcus's and B.B.'s**
**Fourteenth Amendment Procedural Due Process Rights**
(*By Marcus and B.B. as to Defendant Ryan Makowski*)

245. Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

246. The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." US Const, Am XIV.

247. Additionally, the Fourteenth Amendment guarantees a right to privacy, which includes personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. (see *Palko v Connecticut*, 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937)).

52

248. This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (see *Eisenstadt v Baird*, 405 US 438, 453-454; 92 S Ct 1029; 31 L Ed 2d 349 (1972)).

249. Furthermore, parents have a fundamental liberty interest in the care, custody, and management of their children. (see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

250. Due process requires, among other things, that a parent be given notice prior to the seizure of a child stating the reasons for the seizure and that the parent be given a full opportunity at the hearing to present witnesses and evidence on his or her behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

251. Due process rights apply to both children and parents. (see *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

252. When Makowski refused to provide Marcus his parenting time with B.B. for the full week of 3/14/20 through 3/31/20, despite Marcus's repeated requests to do so, he did so without first obtaining judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 3/5/20.

253. When Makowski refused to provide Marcus his parenting time with B.B. for the full week of 3/14/20 through 3/31/20, despite Marcus's repeated requests to do so, neither Marcus nor the B.B. had been given notice prior to the

seizure stating the reasons for seizure, nor were they given a full opportunity at the hearing to present witnesses and evidence on their behalf.

254. Makowski (acting under color of state law), by his action of refusing to provide Marcus parenting time with B.B. for the full week of 3/14/20 through 3/31/20, despite Marcus's repeated requests to do so, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 3/5/20, and without giving notice prior to the seizure stating the reasons for seizure and without giving a full opportunity at the hearing to present witnesses and evidence on their behalf, deprived Marcus and B.B. of their liberty right without due process of law in violation of the Procedural Due Process Clause of the Fourteenth Amendment of the United States Constitution.

255. A CPS social worker, such as Makowski, is not entitled to Absolute Immunity when seizing a child because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

256. At the time of the deprivation, it was clearly established that the Fourteenth Amendment Due Process Clause requires, among other things, that parents be given notice prior to the seizure of a child stating the reasons for seizure and that the parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf. (see *Doe v Staples*, 706 F2d 965, 990 (6th Cir 1983)).

257. Makowski is not entitled to Qualified Immunity for his action of seizing B.B. when he refused to allow parenting time with Marcus for the full week of 3/14/20 through 3/31/20, without judicial pre-approval and when it was contrary to the Trial Court's existing order, dated 3/5/20, and without giving notice prior to the seizure stating the reasons for seizure and without giving Marcus and B.B. a full opportunity at the hearing to present witnesses and evidence on their behalf.

258. Makowski (acting under the color of state law), by his conduct, showed intentional, outrageous, and reckless disregard for Marcus's and B.B.'s constitutional rights.

259. As a direct and proximate result of Makowski's conduct, Marcus and B.B. have suffered emotional injury and the loss of their constitutionally protected rights described above.

**Count XIV – 42 USC 1983**
**For the Deprivation of Marcus's and B.B.'s**
**Fourteenth Amendment Substantive Due Process Rights**
(*By Marcus and B.B. as to Defendant Ryan Makowski*)

260. Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

261. The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." US Const, Am XIV.

262. Additionally, the Fourteenth Amendment guarantees a right to privacy, which includes personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. (see *Palko v Connecticut*, 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937)).

263. This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (see *Eisenstadt v Baird*, 405 US 438, 453-454; 92 S Ct 1029; 31 L Ed 2d 349 (1972)).

264. Furthermore, parents have a fundamental liberty interest in the care, custody, and management of their children. (see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

265. Due process rights apply to both children and parents. (see *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

266. Substantive due process provides that, irrespective of the constitutional sufficiency of the process afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose. (see *Pittman v Cuyahoga Cnty Dep't of Children & Family Services*, 640 F3d 716, 728-729 (6th Cir 2011)).

267. Conduct that is "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and

establish a deprivation of constitutional rights" is a deprivation of substantive due process. (see *Parate v Isibor*, 868 F2d 821, 833 (6th Cir 1989)).

268. Makowski's unlawful conduct includes, but is not limited to:

a. Insisting that the court order requires Marcus to let him speak with B.B. privately during a home visit when no such order existed at the time, then retaliating by filing a Supplemental Petition alleging that Marcus refused to let him speak privately with B.B. during the home visits;

b. refusal to provide Marcus his parenting time with B.B. for the full week of 1/27/19 - 2/2/19, without first obtaining a court order and without Marcus's consent and when there were no exigent circumstances;

c. refusing to follow the Trial Court's order schedule S.B.'s psychological evaluation;

d. Refusing to comply with the Trial Court's order requiring sibling visits and when finally doing so, doing it in a manner that is not fair to both siblings; and

e. refusing to provide Marcus and B.B. with any parenting time from 3/14/20 – 3/31/20, without first obtaining a court order and without Marcus's consent and when there were no exigent circumstances.

269. Makowski's conduct interfered with Marcus's and B.B.'s right to the maintenance of a parent-child relationship.

57

270. Makowski's conduct was not necessary, nor was it animated by a compelling purpose as it was done because Makowski was biased against Marcus, and it was done to retaliate against Marcus for filing motions for contempt against Makowski.

271. Makowski's conduct was so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights.

272. Makowski's conduct led to B.B. being seized in violation of existing court orders and led to B.B. being removed from Marcus's and Wendy's care and custody.

273. Makowski (acting under the color of law), by his actions as described above, violated Marcus's and B.B.'s Fourteenth Amendment Substantive Due Process Rights to be free from a state actor's conduct that is so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights and their right to right to the maintenance of a parent-child relationship.

274. CPS social workers, such as Makowski, are not entitled to Absolute Immunity when removing children from a home because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate. (see

*Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 694 (6th Cir 2013)).

275. At the time of the deprivation, the Fourteenth Amendment Due Process right to the maintenance of a parent-child relationship was clearly established. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 700 (6th Cir 2013)).

276. Makowski is not entitled to Qualified Immunity for his actions in violation of the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution.

277. Makowski (acting under the color of state law), by his conduct, showed intentional, outrageous, and reckless disregard for Marcus's and B.B.'s constitutional rights.

278. As a direct and proximate result of Makowski's conduct, Marcus and B.B. have suffered emotional injury and the loss of their constitutionally protected rights described above.

**Count XV – 42 USC 1983**
**For the Deprivation of Marcus's and B.B.'s**
**Fourteenth Amendment Substantive Due Process Rights**
(By Marcus and B.B. as to Defendant Hon. Miriam A. Cavanaugh)

279. Paragraphs 1 through 73 of the Complaint are incorporated herein by reference.

59

280. The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." US Const, Am XIV.

281. Additionally, the Fourteenth Amendment guarantees a right to privacy, which includes personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. (see *Palko v Connecticut*, 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937)).

282. This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (see *Eisenstadt v Baird*, 405 US 438, 453-454; 92 S Ct 1029; 31 L Ed 2d 349 (1972)).

283. Furthermore, parents have a fundamental liberty interest in the care, custody, and management of their children. (see *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

284. Due process rights apply to both children and parents. (see *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982)).

285. Substantive due process provides that, irrespective of the constitutional sufficiency of the process afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose. (see *Pittman v Cuyahoga Cnty Dep't of Children & Family Services*, 640 F3d 716, 728-729 (6th Cir 2011)).

60

286. In analyzing whether a public official is entitled to absolute immunity, courts have applied a functional approach, which focuses on the nature of the challenged conduct of the official to determine whether, on the one hand, that public official acted legislatively, judicially, or as an advocate, or, on the other hand, the public official acted administratively. *Forrester v White*, 484 US 219; 108 S Ct 538; 98 L Ed 2d 555 (1988), rev'g 792 F2d 647 (7th Cir 1986).

287. While judges enjoy absolute immunity from liability in damages for their judicial or adjudicatory acts, judges are not absolutely immune from liability and damages for administrative, legislative, or executive functions that judges may occasionally be assigned by law to perform. *Forrester v White*, 484 US 219; 108 S Ct 538; 98 L Ed 2d 555 (1988), rev'g 792 F2d 647 (7th Cir 1986).

288. By bringing this claim for relief, Plaintiffs seek a change in the law that just because a judge is on the bench when an action occurs it does not necessarily mean that the action is judicial in nature. The availability of absolute immunity relies on the function the judge performed when they acted.

289. The central question in determining whether as act is a "judicial act", as opposed to an administrative one, for the purposes of applying absolute judicial immunity, is whether the act resolves a dispute between the parties who have invoked the jurisdiction of the court. *Forrester v White*, 484 US 219, 227; 108 S Ct 538; 98 L Ed 2d 555 (1988), rev'g 792 F2d 647 (7th Cir 1986).

290. By not giving Marcus overnight parenting time with B.B., because doing so would exceed a certain number of nights that B.B. would not be in the care and custody of CPS and that would affect the amount of federal funding CPS would receive, Hon. Cavanaugh was acting administratively, not judicially.

291. It is irrelevant to both Marcus and B.B. whether or not CPS receives or doesn't receive federal funding.

292. Basing a decision on how many overnights Marcus should get with B.B. on the question of whether doing so would cause CPS to lose funding does not resolve the dispute between the Parties.

293. Hon. Cavanaugh (acting under color of law), by her actions of not giving Marcus overnight parenting time with B.B., because doing so would exceed a certain number of nights that B.B. would not be in the care and custody of CPS and that would affect the amount of federal funding CPS would receive, deprived B.B. of his right to receive such care, custody, education, and association from Marcus in violation of the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution.

294. Hon. Cavanaugh (acting under color of law), by her actions of not giving Marcus overnight parenting time with B.B., because doing so would exceed a certain number of nights that B.B. would not be in the care and custody of CPS and that would affect the amount of federal funding CPS would receive, deprived

Marcus of his right to the care, custody, education of, and association with B.B. in violation of the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution.

295.  A Judge, such as Hon. Cavanaugh, is not entitled to Absolute Immunity for actions not taken in the judge's judicial capacity. *Mireles v Waco*, 502 US 9, 10; 112 S Ct 286; 116 L Ed 2d 9 (1991).

296.  At the time of the deprivation, the Fourteenth Amendment Due Process right to the maintenance of a parent-child relationship was clearly established. (see *Kovacic v Cuyahoga County Dep't of Children and Family Services*, 724 F3d 687, 700 (6th Cir 2013)).

297.  Hon. Cavanaugh is not entitled to Qualified Immunity for her action of not giving Marcus overnight parenting time with B.B., because doing so would exceed a certain number of nights that B.B. would not be in the care and custody of CPS and that would affect the amount of federal funding CPS would receive, violates the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution.

298.  Hon. Cavanaugh (acting under the color of state law), by her conduct, showed intentional, outrageous, and reckless disregard for Marcus's and B.B.'s constitutional rights.

299. As a direct and proximate result of Hon. Cavanaugh's conduct, Marcus and B.B. have suffered emotional injury and the loss of their constitutionally protected rights described above.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against the Defendants, as follows:

a. Awarding the Plaintiffs compensatory damages against Defendants, including, but not limited to, any emotional distress, and any other compensatory damages as permitted by law;

b. Awarding Plaintiffs punitive and exemplary damages against Defendants in their individual capacities;

c. Awarding Plaintiffs their cost of litigation, including reasonable attorney fees and expenses under 42 USC 1988 and as otherwise provided by law or equity; and

d. Granting such other and further relief as the Court deems proper.

## JURY DEMAND

NOW COME, Plaintiffs, **MARCUS BARRETT** and **WENDY WIERZBICKI**, both individually and on behalf of their minor child, **B.B.** in his own right, by and through their attorneys, TAYLOR BUTTERFIELD, P.C., and they hereby demand a trial by jury in this cause.

Respectfully submitted,

Dated: 4/1/23

**s/ Brian M. Garner**
TAYLOR BUTTERFIELD, P.C.
Brian M. Garner (P71798)
407 Clay Street
Lapeer, MI 48446
810.664.5921 (T)
810.664.0904 (F)
bmgarner@taylorbutterfield.com