UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS BARRETT, *et al.,*

     Plaintiffs,                       Case No. 23-10755

v.

                                        Hon. George Caram Steeh

REBECCA ROBYDEK, *et al.,*

     Defendants.

_____/

OPINION AND ORDER GRANTING
<u>DEFENDANTS' MOTION TO DISMISS (ECF NO. 10)</u>

     Defendants Rebecca Robydek, Kaitlyn Montone, Renee Smith, and Ryan Makowski seek dismissal of Plaintiffs' claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Because the court finds that these defendants are entitled to qualified immunity, it will grant their motion to dismiss.

<u>BACKGROUND FACTS</u>

     This civil rights case arises out of a child abuse and neglect proceeding that spanned from 2018 to 2021. Plaintiffs Marcus Barrett and Wendy Wierzbicki are parents of a minor son, B.B. Barrett is also the father of an older son, S.B. Defendants Rebecca Robydek, Kaitlyn Montone, and Ryan Makowski are social workers with Children's Protective Services

("CPS"), which is part of the Michigan Department of Health and Human Services ("DHHS"). Defendant Renee Smith is a CPS supervisor.

Plaintiffs allege that S.B. had a history of making unsubstantiated abuse allegations against Marcus Barrett. ECF No. 3 at ¶¶ 13-14. In one of the complaints, it was noted that S.B. "makes up stories to get Marcus and other adults in trouble with police and CPS." *Id.* In a meeting regarding S.B., Robydek allegedly told Barrett that "if you do not sell your house and move out of the county . . . not only will we take away [S.B.], but we will take your favorite son [B.B.] as well." *Id.* ¶ 17. Barrett reported what Robydek said to her supervisor.

Approximately one month later, Robydek signed a CPS investigation report alleging that a preponderance of the evidence was found for one of S.B.'s complaints of abuse. *Id.* at ¶ 20. Two more complaints were made alleging that Barrett had "physically abused, improperly supervised and had maltreated S.B. In these complaints it is was noted that Marcus is manipulating law enforcement and S.B. is a troubled and poorly behaved child." *Id.* at ¶ 21.

On October 26, 2018, CPS social worker Sharyn Jeske filed a petition for the removal of S.B. and B.B., which was approved by Robydek. The children were placed with Barrett's parents. Following a preliminary

hearing, in which Barrett and Wierzbicki waived the probable cause determination, the circuit court placed S.B. in foster care and ordered B.B. to be released to his mother, Wierzbicki. The court's order provided for Barrett to have supervised parenting time. *See* ECF No. 11 at PageID 264-67. Plaintiffs contend that "[d]espite the Trial Court's order, Montone refused to release B.B. to Wendy [Wierzbicki] for two whole days." ECF No. 3 at ¶ 26.

The abuse and neglect case continued for over two years and hundreds of docket entries. Generally, Plaintiffs complain that Barrett did not receive parenting time with B.B. as ordered by the court. For example, on December 18, 2018, the court ordered that Barrett have parenting time with B.B. for a minimum of two times per week, for a minimum of one hour. ECF No. 3 at ¶¶ 31-32. The order provided that "[t]he supervisor shall have the discretion to terminate parenting time if Respondents are inappropriate in any way." ECF No. 11 at PageID 271. Plaintiffs allege that Montone refused to allow Barrett parenting time for the week of December 17 to 23, 2018, despite repeated requests, and refused parenting time on Christmas Eve and Christmas. *Id.* at ¶¶ 33-34.

Based upon Montone's refusal to provide parenting time, Barrett filed a motion for contempt on December 24, 2018. *Id.* at ¶ 39. The motion was

heard on January 4, 2019; and the court continued Barrett's supervised parenting time and adjourned the motion for contempt until further notice. *Id.* at ¶ 40.

Plaintiffs allege that on January 10, 2019, Montone terminated Barrett's parenting time after fifteen minutes. *Id.* at ¶¶ 43-44. Montone claimed that she did so on her supervisor's (Renee Smith's) direction, because Barrett was speaking to B.B. about the pending abuse and neglect case, which Barrett denies. *Id.*

Thereafter, Ryan Makowski became the CPS caseworker assigned to the abuse and neglect case. Plaintiffs allege that Makowski refused to provide parenting time to Barrett for the week of January 27-February 2, 2019, despite repeated requests. ECF No. 3 at ¶ 51.

On February 5, 2019, the court ordered a psychological evaluation for S.B., and for B.B. to be released to Barrett and Wierzbicki. Plaintiffs allege that Barrett had "extreme difficulty getting Makowski to comply with the order and arrange the evaluation." *Id.* at ¶ 56.

On February 27, 2019, the court ordered for sibling visits to occur, facilitated by DHHS. Plaintiffs allege that Makowski arranged for a sibling visit to occur 130 miles from B.B.'s residence and 55 miles from S.B.'s residence. Makowski refused to change the location upon request and

"disregarded all communication with Marcus regarding the sibling visit." *Id.* at ¶ 58. Makowski also prohibited Barrett from participating in B.B.'s extracurricular activities or doctor's visits. *Id.* at ¶ 59.

Barrett filed a motion for order of contempt against Makowski, related to his objections regarding the psychological evaluation, sibling visits, parenting time, and extracurricular activities and doctor's visits. ECF No. 3 at ¶ 60. After a hearing on March 25, 2019, the motion was dismissed without prejudice. ECF No. 11 at PageID 285. Among other rulings, the court scheduled a jury trial. *Id.*

On May 7, 2019, Makowski filed a supplemental petition for removal of both children and to terminate Barrett's parental rights to S.B., alleging that Barrett refused to let Makowski speak with B.B. in private. ECF No. 3 at ¶¶ 61-62. Plaintiffs allege that Makowski filed the supplemental petition in retaliation for the filing of the motion for contempt.

A jury trial was held in the abuse and neglect case on June 18, 2019, and a finding was made that "there are statutory grounds to exercise jurisdiction over the child(ren)," including the "failure to provide . . . support, education, medical, surgical, or other necessary care for health or morals," "substantial risk of harm to mental well-being," and "an unfit home environment." ECF No. 11 at PageID 288. S.B. was placed in the care of

DHHS, while B.B. was released to Barrett and Wierzbicki. However, on September 30, 2019, the court issued an *ex parte* order again removing B.B. from the care and custody of his parents. ECF No 3 at ¶ 64.

On October 3, 2019, the court ordered Barrett and Wierzbicki to have supervised parenting time. Thereafter, the court entered a series of orders regarding parenting time. On March 5, 2020, the court ordered that Barrett's parenting time was to be supervised by Isaac Watts. Plaintiffs allege that even though Watts was willing to supervise the visits, Makowski did not allow parenting time between March 14 and March 31, 2020.[1] Barrett filed a motion to compel parenting time on March 27, 2020. In response, the court entered an order providing for electronic parenting time, due to public health and safety issues. ECF No. 11 at PageID 298.

The court continued its previous parenting time order until November 2020, when Barrett and Wierzbicki moved for unsupervised parenting time. The court continued Wierzbicki's parenting time as previously ordered and provided Barrett with supervised parenting time twice a week, up to ten hours total. ECF No. 3 at ¶ 79. This order was continued until February 23,

---

[1] This occurred during the beginning of the coronavirus pandemic. On March 23, 2020, Governor Whitmer issued an executive order requiring non-essential workers to stay home, although the order contained an exception for court-ordered parenting time. ECF No. 3 at ¶ 75.

2021, when the court entered an order closing the case and returning B.B. to his parents' care and custody. *Id.* at ¶ 80.

Plaintiffs filed their complaint in this case on April 1, 2023, alleging the following counts: Count I, violation of Fourteenth Amendment substantive due process rights (against Robydek); Count II, seizure of B.B. from November 5-7, 2018, by Montone in violation of the Fourth Amendment; Count III, violation of due process related to the November 5-7 seizure of B.B. (against Montone); Count IV, December 17-23, 2018, seizure of B.B. in violation of the Fourth Amendment (against Montone); Count V, violation of procedural due process related to the December 17-23 seizure of B.B. (against Montone); Count VI, seizure of B.B. on January 10, 2019, in violation of the Fourth Amendment; Count VII, violation of procedural due process related to January 10 seizure of B.B. (against Montone); Count VIII, supervisor liability for approving January 10 seizure of B.B. (against Renee Smith); Count IX, supervisor liability for acquiescing in the January 10 procedural due process violation (against Smith); Count X, seizure of B.B. from January 27, 2019, to February 2, 2019, in violation of the Fourth Amendment (against Makowski); Count XI, violation of procedural due process related to January 27-February 2 seizure of B.B. (against Makowski); Count XII, seizure of B.B. from March 14, 2020, to

March 31, 2020, in violation of the Fourth Amendment (against Makowski);

Count XIII, violation of procedural due process related to March 14-31

seizure of B.B. (against Makowski); Count XIV, violation of substantive due

process (against Makowski); and Count XV, violation of substantive due

process against Judge Miriam A. Cavanagh.[2] Although the caption of the

amended complaint states that the Defendants are being sued in their

individual and official capacities, the body of the complaint and Plaintiffs'

response brief make clear that Plaintiffs are pursuing individual capacity

claims only. ECF No. 3 at ¶ 1; ECF No. 15 at PageID 389-91.

<u>LAW AND ANALYSIS</u>

I.    <u>Standard of Review</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must

allege facts that, if accepted as true, are sufficient "to raise a right to relief

above the speculative level" and to "state a claim to relief that is plausible

on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see

also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must

contain either direct or inferential allegations respecting all the material

elements to sustain a recovery under some viable legal theory." *Advocacy*

---

[2] Count XV is the subject of a motion brought by Judge Cavanagh and will be addressed in a separate order.

*Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

II.   Qualified Immunity

Plaintiffs' claims arise under 42 U.S.C. § 1983, which requires (1) the deprivation of a constitutional right (2) by a person acting under color of state law. *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018). Defendants argue that they are entitled to qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

-9-

reasonably." *Id.* Ultimately, the "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018).

In determining whether a defendant is entitled to qualified immunity, the court inquires as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (abrogated on other grounds by *Pearson*, 555 U.S. at 236). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next . . . step is to ask whether the right was clearly established. . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-202.  It is within the court's discretion to determine which prong of this analysis to address first, depending upon the circumstances of the case. *Pearson*, 555 U.S. at 236. However, "[w]hen a qualified immunity defense is asserted at the pleading stage, we have historically found that the inquiry should be limited to the 'clearly established' prong of the analysis if feasible." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021) (citing *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015)). *See also Siefert v. Hamilton Cnty*., 951 F.3d 753,

-10-

762 (6th Cir. 2020) (qualified immunity appropriate at pleadings stage "when the *complaint* establishes the defense").

To be "clearly established," a legal principle must be "settled law," which means "it is dictated by 'controlling authority' or a 'robust consensus of cases of persuasive authority.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018) (citations omitted). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (cleaned up). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (citation omitted). This standard protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation omitted).

A. <u>Fourth Amendment Seizure Claims</u>

The numerous counts in Plaintiffs' complaint may be grouped into three categories: (1) violations of their Fourth Amendment right against warrantless seizures, (2) violations of procedural due process under the Fourteenth Amendment; and (3) violations of substantive due process rights under the Fourteenth Amendment. The court first considers the Fourth Amendment claim.

Like other state officers, social workers are "governed by the Fourth Amendment's warrant requirement." *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 695 (6th Cir. 2013). They must "obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes." *Id.*

Plaintiffs argue that Montone and Makowski "seized" B.B. in violation of the Fourth Amendment when they did not provide Barrett with court-ordered parenting time or immediately release him to Wierzbicki in November 2018. In support of this claim, Plaintiffs cite *Kovacic*, in which the court held that it was clearly established under the Fourth Amendment that "a social worker could not seize children from their home without a

warrant, exigent circumstances, or another recognized exception." *Id.* at 698. The general principle set forth in *Kovacic* does not assist Plaintiffs here, however, because they are not alleging that Montone and Makowski removed B.B. from his home without a warrant. Rather, they allege that Montone and Makowski did not arrange for court-ordered, supervised parenting time for Barrett with B.B., or immediately release B.B. to Wierzbicki pursuant to an order, after an abuse and neglect case had commenced. Each of the alleged seizures occurred *after* a preliminary hearing was held and the court became involved. It is not clear how the social workers' actions, while B.B. was under the supervision of CPS pursuant to a court order, resulted in a "seizure" of B.B., such that a warrant, exigent circumstances, or consent would be required. *See* ECF No. 11 at PageID 264-67 (Order after Preliminary Hearing (Child Protective Proceedings)). Plaintiffs cite no case suggesting that Montone and Makowski's conduct, in the particularized circumstances they faced, would violate the Fourth Amendment's prohibition on warrantless seizures. *See generally Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 686-87 (6th Cir. 2018) (no violation of clearly established Fourth Amendment law when social worker questioned minor in his own home and did not "seize" him).

B. <u>Fourteenth Amendment Procedural Due Process Claims</u>

Plaintiffs' procedural due process claims are similarly flawed. As a general matter, it is "clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000). In the context of the removal of a child, due process requires that "parents be given notice prior to the removal of the child . . . stating the reasons for the removal . . . [and that] [t]he parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf." *Kovacic*, 724 F.3d at 700.

Plaintiffs cite no precedent demonstrating that they are entitled to a hearing before a social worker can exercise discretion or refuse to provide parenting time pursuant to a court order. Plaintiffs received a hearing before the children were placed under the jurisdiction of CPS. The result of the hearing was an order governing parenting time. Plaintiffs cite no authority suggesting that the social workers' administration or refusal of parenting time pursuant to that order triggers additional due process protections.

Moreover, parenting time and B.B.'s placement was administered under the supervision of the state court. To the extent Plaintiffs claim that

Montone and Makowski did not comply with court orders, such issues were for the state court to address, which it did, in response to motions filed by Plaintiffs. The record reflects that Plaintiffs had an opportunity to be heard on these issues.

The court finds that there is no clearly established precedent that would alert Montone or Makowski that their actions violated either the Fourth or Fourteenth Amendments, and that they are entitled to qualified immunity with respect to Counts II, III, IV, V, VI, VII, X, XI, XII, and XIII. It follows that Smith is entitled to qualified immunity for the supervisor liability claims against her as well (Counts VIII and IX). *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor."); *Bambach v. Moegle*, __ F.4th __, 2024 WL 489356, at *10 (6th Cir. Feb. 8, 2024) (holding that "a necessary predicate" to supervisor liability "is the existence of clearly established law indicating the *subordinate's* actions were unconstitutional").

C. Substantive Due Process Claims

The remaining counts are Counts I and XIV, which allege substantive due process claims against Robydek and Makowski. "[S]ubstantive due process provides that, irrespective of the constitutional sufficiency of the

-15-

processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Bartell v. Lohiser*, 215 F.3d 550, 557-58 (6th Cir. 2000). "[T]he right to family integrity and association without interference from the state . . . is the paradigmatic example of a substantive due process guarantee." *Schulkers v. Kammer*, 955 F.3d 520, 540 (6th Cir. 2020). However, "the right to family integrity, while critically important, is neither absolute nor unqualified. The right is limited by an equaling compelling governmental interest in the protection of children, particularly where the children need to be protected from their own parents." *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006) (citations omitted).

The law in the Sixth Circuit regarding the standard for substantive due process claims is somewhat muddled. In *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, the court stated that "[s]ubstantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" 640 F.3d 716, 728 (6th Cir. 2011) (citation omitted). But in other cases, "the court has suggested both prongs are required." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765-66 (6th Cir. 2020) (citations omitted). "Most recently, however, we have held that when we review a substantive

due process claim, we first ask whether the plaintiff has shown 'a deprivation of a constitutionally protected liberty interest' and then ask whether 'the government's discretionary conduct that deprived that interest was constitutionally repugnant.' . . . 'Thus, a plaintiff must show as a predicate the deprivation of a liberty or property interest,' as well as 'conscience-shocking conduct.'" *Id.* (citations omitted). Although "conscience shocking" is not well-defined, "'abuse of power' serves as the North Star in the analysis." *Id.*

With regard to their substantive due process claims against Robydek and Makowski, Plaintiffs assert that it is clearly established that "substantive due process protect[s] against seizures by a social worker where there was no justification for the seizure." ECF No. 15 at PageID 395-96 (citing *Vinson v. Campbell Cty. Fiscal Court*, 820 F.2d 194 (6th Cir. 1987)). This general proposition does not control here, because Plaintiffs do not allege that Robydek or Makowski engaged in conduct that could be viewed as a seizure or other deprivation of a constitutionally protected liberty interest.

As for Robydek, Plaintiffs claim that she threatened to remove B.B. from Barrett's custody in retaliation for problems caused by S.B. Although such a threat could arguably be viewed as "conscience shocking," Robydek

did not actually remove the children from their parents' custody without a court order or facilitate such a removal. Plaintiffs have cited no authority for the proposition that such a threat, standing alone, violates the right to family integrity or otherwise constitutes a substantive due process violation.

The analysis might be different if Plaintiffs had alleged that the child abuse and neglect investigation was done with bad faith or an improper motive, and was unfounded. *See Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585 (6th Cir. 2013) ("[A] government investigation of child abuse will not automatically implicate the right to familial association, absent evidence of bad faith, improper motive, or investigation tactics that 'shock the conscience.'"); *cf. Schulkers v. Kammer*, 955 F.3d 520, 542 (6th Cir. 2020) ("Defendants were on fair notice that it would be unlawful to deprive Holly of her liberty interest in the companionship of her children without any plausible suspicion of child abuse."). Such an argument is precluded here by the state court's determination that the children should be placed in the care and custody of CPS and a jury verdict substantiating the abuse. Under the circumstances, it was the *court's* actions that caused the removal of the children, not Robydek's. *See Pittman*, 640 F.3d at 729 ("Because the juvenile court has the ultimate decisionmaking power with respect to

-18-

placement and custody, it alone could deprive Pittman of his fundamental right.").

Plaintiffs' claim against Makowski is similarly deficient. In making decisions regarding psychological evaluations, parenting time, and sibling visits, Makowski was acting pursuant to discretion bestowed by court order. The state court had already made the determination that the children should be under the care and custody of CPS. *See Pittman*, 640 F.3d at 729 ("[T]o the extent that Pittman suffered a deprivation of his fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not by [the social worker]."). Plaintiffs cite no authority for the proposition that a social worker who is administering parenting time, arranging sibling visits, or otherwise attending to a child's needs under court supervision may deprive a parent of his fundamental right to family integrity. *See Toliver v. Lutheran Soc. Servs*., No. 07-14179, 2009 WL 211034, at *2 (E.D. Mich. Jan. 27, 2009) ("Plaintiffs fail to cite, and this Court's independent search has failed to uncover, any case recognizing a federally protected right to visitation or services while children are temporarily housed in foster care pursuant to a valid court order."); *Young v. Cnty. of Fulton*, 999 F. Supp. 282, 286–87 (N.D.N.Y.), *aff'd*, 160 F.3d 899 (2d Cir. 1998) ("The plaintiff has failed to set forth even one case which

establishes that visitation, as opposed to custody, is a constitutionally protected liberty interest of a parent who does not have custody."); *see also Leta v. Hamilton Cnty. Dep't of Job & Fam. Servs.,* 668 F. Supp.3d 724, 736 (S.D. Ohio 2023), *aff'd sub nom. Leta v. TriHealth, Inc.*, 2024 WL 229563 (6th Cir. Jan. 22, 2024) (no clearly established "authority holding that parents who have lost temporary custody of their children retain a substantive due process right to access and control their children's medical decisions"). As in *Pittman*, to the extent that Plaintiffs' fundamental right to family integrity is implicated in this case, any deprivation was the result of state court action, not the conduct of the social workers. *Pittman*, 640 F.3d at 729.

## CONCLUSION

Plaintiffs have failed to sufficiently allege that Defendants violated their clearly established constitutional rights. Accordingly, the court finds that Defendants are entitled to qualified immunity.

IT IS HEREBY ORDERED that Defendants' motion to dismiss (ECF No. 10) is GRANTED.

Dated: February 29, 2024

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on February 29, 2024, by electronic and/or ordinary mail.

s/Lashawn Saulsberry
Deputy Clerk